# ATTACHMENT A

Filed
D.C. Superior Court
12/15/2017 16:02PM
Clerk of the Court

## SUPERIOR COURT OF THE DISTRICT OF COLUMBIA
## CIVIL DIVISION

| | |
|---|---|
| ORGANIC CONSUMERS ASSOCIATION, 6771 South Silver Hill Drive, Finland, MN 55603, <br><br>                      Plaintiff, <br><br> v. <br><br> R.C. BIGELOW, INC., 201 Black Rock Turnpike, Fairfield, CT, 06825, <br><br>                      Defendant. | Case No. _____ <br><br> **COMPLAINT** <br><br> **DEMAND FOR JURY TRIAL** |

## COMPLAINT

On behalf of the general public, Plaintiff the Organic Consumers Association ("Plaintiff"), by and through its counsel, bring this action against Defendant R.C. Bigelow, Inc. ("Bigelow" or "Defendant") regarding the deceptive labeling, marketing, and sale of tea products that were or are sold under the "Bigelow" brand name, including Bigelow's Green Tea, with the representation "All Natural," "Natural," or other representations that the tea products are environmentally friendly (collectively, the "Products"), [1] and allege the following based upon information, belief, and the investigation of their counsel:

## INTRODUCTION

1.     Consumers are aware of the health risks and environmental damage caused by chemical-laden foods, especially packaged foods, and increasingly demand food items and beverages that do not contain unnatural, difficult-to-pronounce chemicals.

2.     Bigelow knows that consumers seek out and wish to purchase whole, natural foods that do not contain unnatural chemicals, and that consumers will pay more for foods that they believe to be natural or environmentally friendly than they will pay for foods that they do not

---

[1] Bigelow uses "All Natural" or "Natural" representations across nearly all their products. Plaintiff reserves the right to add or remove products to the definition of Products as used in this Complaint as they become known.

believe to be natural.

3.      To capture this growing market, Bigelow prominently places "All Natural" and "Natural" representations on the front label of the Products, on the individual wrapped tea bag, and on its social media pages including Twitter, Facebook, and Instagram. Bigelow reinforces these representations with claims that the company is committed to "sustainability" and "protecting the environment":





4.     These claims are false, deceptive, and misleading. The Products at issue are not "All Natural," but instead the Products contain the synthetic chemical glyphosate, a potent biocide and human endocrine disruptor, with detrimental health effects that are still becoming known.

5.     No reasonable consumer who sees these representations would expect that the tea or any ingredients in the Products contain something that is unnatural.

6.      Tests conducted by an independent laboratory using liquid chromatography mass spectrometry revealed the amount of glyphosate in Bigelow Green Tea to be 0.38 ppm.

7.      Bigelow does not disclose that glyphosate is present in the Products; instead, it falsely claims that the Products are "Natural," "All Natural," and/or environmentally friendly.

8.      The exact source of glyphosate in the Products is known only to Bigelow and its suppliers.[2]

9.      By deceiving consumers about the nature, quality, and/or ingredients of the Products, Bigelow is able to sell a greater volume of the Products, to charge higher prices for the Products, and to take away market share from competing products, thereby increasing its own sales and profits.

10.      Consumers lack the scientific knowledge necessary to determine whether the Products are in fact "Natural," All Natural," or environmentally friendly, or to know or ascertain the true ingredients and quality of the Products.

11.      Reasonable consumers must and do rely on Bigelow to report honestly what the Products contain, and whether the Products are in fact "All Natural" and environmentally friendly.

12.      Bigelow intended for consumers to rely on its representations, and reasonable consumers did in fact so rely. As a result of its false and misleading labeling, Bigelow was and is able to sell the Products to the general public of the District of Columbia and to realize sizeable profits.

13.      Bigelow's false and misleading representations and omissions violate the District of Columbia Consumer Protection Procedures Act ("DC CPPA"), D.C. Code §§ 28-3901, *et seq*.

14.      Because Bigelow's labeling and advertising of the Products misleads and is materially deceptive about the true nature, quality, and ingredients of the Products, Plaintiff brings this deceptive advertising case on behalf of the general public, and seek relief including an

---

[2] Further discovery will reveal the precise source of the glyphosate.

COMPLAINT

injunction to halt Bigelow's false marketing and sale of the Products.

## JURISDICTION AND VENUE

15.    This Court has personal jurisdiction over the parties in this case. Plaintiff, by filing this Complaint, consent to this Court having personal jurisdiction over it.

16.    Plaintiff, the Organic Consumer Association ("OCA"), has a presence in the District of Columbia.

17.    This Court has personal jurisdiction over Bigelow pursuant to D.C. Code § 13-423. Bigelow has sufficient minimum contacts with the District of Columbia to establish personal jurisdiction of this Court over it because, *inter alia*, Bigelow is engaged in deceptive schemes and acts directed at persons residing in, located in, or doing business in the District of Columbia, or otherwise purposefully avails itself of the laws of this District through its marketing and sales of the Products in this District.

18.    This Court has subject matter jurisdiction over this action pursuant to D.C. Code §§ 28-3905(k)(1)(B), (k)(1)(C), (k)(1)(D), and (k)(2).

19.    Venue is proper in this District under 28 U.S.C. § 1391(b). Substantial acts in furtherance of the alleged improper conduct, including the dissemination of false and misleading information regarding the nature and quality of the Products, occurred within this District. The Products are available for purchase at retail stores in the District of Columbia.

## PARTIES

20.    The OCA is a 501(c)(3) non-profit public-interest organization that deals with crucial issues of truth in advertising, accurate food labeling, food safety, genetic engineering, children's health, corporate accountability, environmental sustainability, and related topics.

21.    The OCA performs its work throughout the United States, including in the District of Columbia. Some of the OCA's staff resides in or near the District of Columbia, including its political director. The OCA has members who reside in the District of Columbia.

22.     The OCA was formed in 1998 in the wake of backlash by consumers against the U.S. Department of Agriculture's controversial proposed national regulations for organic food. In its public education, network building, and mobilization activities, the OCA works with a broad range of public interest organizations to challenge industrial agriculture, corporate globalization, and to inspire consumers to "Buy Local, Organic, and Fair Made." The OCA's website, publications, research, and campaign staff provide an important service for hundreds of thousands of consumers and community activists every month. Its media team provides background information, interviews, and story ideas to television and radio producers and journalists on a daily basis.

23.     Thus, the OCA's focus is on representing the views and interests of consumers by educating consumers on food safety, industrial agriculture, genetic engineering, corporate accountability, and environmental sustainability issues. The OCA uses funds it raises to educate consumers, increasing their awareness and knowledge of the agricultural production, and to protect the environment by regenerating organic and/or sustainable agriculture. The OCA also uses its funds and member base to pressure food companies to adopt honest labeling practices, to the benefit of consumers.

24.     On October 4, 2017, OCA purchased Bigelow Classic Green Tea at a Walmart located at 5929 Georgia Ave NW, Washington, D.C. in order to evaluate its purported qualities as an "All Natural" and environmentally friendly product.

25.     At all times mentioned herein, R.C. Bigelow, Inc. was a Connecticut corporation with its primary place of business at 201 Black Rock Turnpike, Fairfield, CT. Bigelow was and is, at all relevant times, engaged in commercial transactions throughout the District of Columbia, and through the internet.

26.     Bigelow manufactures and/or causes the manufacture of tea products, and markets and distributes the products in retail stores in the District of Columbia and throughout the United

`

States.

27.     Upon information and belief, Bigelow has caused harm to the general public of the District of Columbia.

28.     The OCA is acting for the benefit of the general public as private attorneys general pursuant to D.C. Code § 28-3905(k)(1). The OCA is a non-profit organization pursuant to D.C. Code § 28-3901(a)(14) and a public-interest organization pursuant to D.C. Code § 28-3901(a)(15).

## FACTUAL ALLEGATIONS

29.     Plaintiff brings this suit under the DC CPPA, D.C. Code § 28-3901 *et seq.*, against Bigelow based on misrepresentations and omissions committed by Bigelow regarding the Products, which Bigelow falsely and deceptively labels and markets as "Natural," or "All Natural," and environmentally friendly, when in fact the Products are not all natural or environmentally friendly and contain unnatural biocides.

30.     In fact, the Products contain glyphosate, a potent and unnatural biocide.

**A.     Bigelow Cultivates a "Natural" and Environmentally Sustainable Brand Image for its Tea**

31.     American consumers increasingly and consciously seek out natural and healthful food and beverage products.

32.     Once a small niche market, natural foods and beverages are now sold by conventional retailers and their sales continue to soar.

33.     Consumers value natural food and drink, including tea, for myriad health, environmental, and political reasons, including avoiding chemicals and additives, attaining health and wellness, helping the environment, and financially supporting companies that share these values.

34.     Bigelow knows that consumers seek out and wish to purchase natural foods and beverages that do not contain artificial chemicals, and that consumers will pay more for beverages that they believe to be natural than they will pay for beverages that they do not believe to be natural.

35.     A recent nationally representative Consumer Reports survey of 1,005 adults found that more than half consumers usually seek out products with a "natural" label, often in the false belief that they're produced without genetically modified organisms, hormones, pesticides, or artificial ingredients.[3]

36.     To capture this market, Bigelow markets its tea as a natural and healthful brand that is "All Natural."

37.     Bigelow does not disclose the presence of glyphosate in the Products.

38.     Bigelow cultivates an image of its tea as a natural, healthful, wholesome, impurity-free, and environmentally responsible product. Bigelow positions itself as the kind of company whose label claims can be trusted, stating on its website: "Our worldwide supplier of tea and herbs practices holistic sustainability principles, including a focus on environmental, economic and social responsibility throughout their supply chains."[4]

39.     Bigelow presents itself as a company that is committed to protecting the environment:

> Why have a SustainabiliTea program? Why be "green"? Why put so much energy into protecting our planet? Because it is the right thing to do . . . . This pertains to all aspects of our business. . . . We at Bigelow tea are serious about protecting the environment, giving back to our community and taking care of our employees and their families . . . for future generations.[5]

40.     Nowhere on its website does Bigelow mention the presence of glyphosate in the Products.

---

[3] *See* Consumer Reports National Research Center, *Natural Food Labels Survey* (2015) *available at* http://www.consumerreports.org/content/dam/cro/magazine-articles/2016/March/Consumer_Reports_Natural_Food_Labels_Survey_2015.pdf, last visited December 15, 2017.

[4] *See* Bigelow Tea Company, "Tea and Herb Suppliers," http://www.bigelowtea.com/Responsibility/Sustainability/Supplier-Relationships/Tea-and-Herb-Suppliers, last visited December 15, 2017.

[5] *See* Bigelow Tea Company, "Sustainability," https://www.bigelowtea.com/Responsibility/Sustainability, last visited December 15, 2017.

COMPLAINT

**B.**     **Bigelow Presents its Tea as "All Natural" and Environmentally Friendly.**

41.     Bigelow prominently labels its tea products as "All Natural." These representations appear on the front label of both the box and the tea bag.

42.     On the back of the Products, Bigelow represents itself and its products by stating, "It's easy being green. Here at Bigelow Tea, our commitment to the environment is a top priority! . . . At Bigelow we are 100% committed to protecting the environment now, and for generations to come!"

43.     Upon information and belief, Bigelow has profited enormously from its falsely marketed products and its carefully orchestrated label and image.

44.     Representing that a product is "Natural," "All Natural," or environmentally friendly is a (false) statement of fact.

45.     Failing to disclose that a product contains glyphosate and the dangers of ingesting glyphosate are omissions of relevant fact.

46.     Consumers reasonably believe that a product or ingredient represented as natural or all natural does not contain synthetic ingredients and that a product labeled "All Natural" does not contain synthetic chemicals.

47.     Consumers reasonably believe that a product or ingredient represented as natural or all natural does not contain biocides.

48.     In 2015, the Consumer Reports National Research Center conducted a nationally representative phone survey to assess consumer opinion regarding food labeling.[6]

49.     Sixty-three percent of all respondents in the Consumer Reports survey said that a "natural" label on packaged and processed foods means that "no toxic pesticides were used."[7]

50.     Bigelow knows and intends that when consumers see the product labels or advertisements promising the product is "All Natural" or "Natural," consumers will understand

---

[6] Consumer Reports National Research Center, *supra* note 3.

[7] *Id.*

COMPLAINT

that to mean that, at the very least, the tea or other ingredients in the product do not contain synthetic ingredients or chemicals.

51.     Consumers reasonably expect that if a product contains a potentially harmful substance, such as glyphosate, the presence of that substance will be disclosed, and/or they will be informed of the dangers associated with the substance.

**C.     Glyphosate Is Neither Natural Nor Environmentally Friendly.**

52.     Bigelow's representations that the Products are "All Natural" or environmentally friendly are false. In fact, quantitative testing revealed that the Products contain glyphosate.

53.     The Products thus are not "Natural" and they are not "All Natural," and labeling or advertising the Products as such is misleading and deceptive.

54.     Bigelow has a duty to not misrepresent the Products by disclosing the presence of glyphosate.

55.     On information and belief, glyphosate is, by volume, the world's most widely produced herbicide.

56.     Glyphosate was invented by the agrochemical and agricultural biotechnology corporation Monsanto, which began marketing the herbicide in 1974 under the trade name Roundup, after DDT was banned.[8]

57.     On information and belief, this use of glyphosate is not for any health or environmental purpose.

58.     By the late 1990s, use of Roundup had surged as a result of Monsanto's strategy of genetically engineering seeds to grow food crops that could tolerate high doses of the herbicide. The introduction of these genetically engineered seeds enabled farmers more easily to control

---

[8] *See* https://www.organicconsumers.org/news/monsantos-roundup-enough-make-you-sick, last visited December 15, 2017.

COMPLAINT

weeds on their crops.[9] Today, glyphosate is routinely sprayed directly on a host of non-genetically modified crops.[10]

59.     Between 1996 and 2011, herbicide use in the United States *increased* by 527 million pounds, despite Monsanto's claims that genetically modified crops would *reduce* pesticide and herbicide use.[11]

60.     The frequent use of glyphosate has led to the formation of glyphosate-resistant "superweeds."[12] The proliferation of these superweeds requires farmers to use more glyphosate at levels that can harm the ecosystem or use other herbicides that are known to be harmful to the environment.[13]

61.     Glyphosate is a suspected human endocrine disruptor, with estrogenic effects even

---

[9] *Id.*

[10] *Id.*

[11] *Id.*

[12] Jordan Wilkerson, "Why Roundup Ready Crops Have Lost Their Allure," Harvard University Graduate School of Arts and Sciences Science in the News Blog, Aug. 10, 2015, http://sitn.hms.harvard.edu/flash/2015/roundup-ready-crops/ ("We do not have to go into detail about probabilities to assess whether superweeds will form – we already have confirmation that they have. Twenty-four cases of glyphosate-resistant weeds have been reported around the world, 14 of which are in the United States.").

[13] *Id.* ("This increased use of glyphosate heightens the likelihood of higher concentrations of the chemical running off into nearby ecosystems. At these elevated concentrations, glyphosate may be capable of causing environmental damage."); William Neuman and Andrew Pollack, "Farmers Cope With Roundup-Resistant Weeds," N.Y. Times, B1, New York Edition May 4, 2010, available at http://www.nytimes.com/2010/05/04/business/energy-environment/04weed.html ("American farmers' near-ubiquitous use of the weedkiller Roundup has led to the rapid growth of tenacious new superweeds. To fight them, Mr. Anderson and farmers throughout the East, Midwest and South are being forced to spray fields with more toxic herbicides . . . .")

`

at extremely low concentrations.[14]

62.     In November 2015, the European Food Safety Agency published conclusions suggesting that the combined use of glyphosate with other chemicals posed greater potential health risks than when glyphosate is used alone.

63.     In light of those conclusions, in April 2016, following a review of products containing glyphosate and tallowamine, France's health and safety agency announced its intention to ban weed-killers that combine the two chemicals.[15]

64.     Glyphosate, as a biocide, functions by disrupting the shikimate pathway.[16]

65.     Although humans themselves do not have a shikimate pathway, the shikimate pathway is present in bacteria, including bacteria that inhabit the human gut and are essential to proper immune functioning.

66.     Glyphosate thus is suspected to disrupt human immune function as well.

67.     Studies examining low doses of glyphosate-based herbicides at levels that are generally considered "safe" for humans show that these compounds can nevertheless cause liver

---

[14] *See* Thongprakaisang, S. *et al.*, "Glyphosate induces human breast cancer cells growth via estrogen receptors," 59 *Food & Chem. Toxicol.* 129 (June 2013), *abstract available at* http://www.ncbi.nlm.nih.gov/pubmed/23756170, last visited December 15, 2017; *see also, e.g.*, Gasnier, C. *et al.*, "Glyphosate-based herbicides are toxic and endocrine disruptors in human cell lines," 262(3) *Toxicology* 184 (Aug. 21, 2009), *abstract available at* http://www.ncbi.nlm.nih.gov/pubmed/19539684, last visited December 15, 2017.

[15] *See* "France to Ban Some Glyphosate Weedkillers Amid Health Concerns," Reuters, Apr. 8, 2016, available at http://www.reuters.com/article/us-france-glyphosate-idUSKCN0X512S, last visited December 15, 2017.

[16] *See, e.g.*, Heike, H. & N. Amrhein, "The Site of the Inhibition of the Shikimate Pathway by Glyphosate," *Plant Physiol.* 66:823 (1980), *available at* http://www.plantphysiol.org/content/66/5/823.full.pdf, last visited December 15, 2017; *see also* http://www.glyphosate.eu/glyphosate-mechanism-action, last visited December 15, 2017.

`

and kidney damage.[17]

68.     California's Office of Environmental Health Hazard Assessment recently added glyphosate to its list of chemicals known to cause cancer, for purposes of complying with the state's Proposition 65. In March of 2015, the International Agency for Research on Cancer (IARC), a research arm of the World Health Organization, declared glyphosate a category 2A "probable" human carcinogen. A summary of the study underlying this declaration was published in *The Lancet Oncology*.[18] The IARC study noted such carcinogenic risk factors as DNA damage to human cells resulting from exposure to glyphosate.[19]

69.     Glyphosate is derived from the amino acid glycine.

70.     To create glyphosate, one of the hydrogen atoms in glycine is artificially replaced with a phosphonomethyl group.

71.     Glyphosate is not "All Natural" or environmentally friendly.

72.     Glyphosate is not present in truly natural tea.

73.     On information and belief, glyphosate is used to increase tea harvest for commercial

---

[17] Myers, J., *et al.*, "Concerns over use of glyphosate-based herbicides and risks associated with exposures: a consensus statement," *Environ. Health* 2016 15:9, available at https://ehjournal.biomedcentral.com/articles/10.1186/s12940-016-0117-0, last visited December 15, 2017; *see also* Seralini, G.E., et al, "Republished study: long-term toxicity of a Roundup herbicide and a Roundup-tolerant genetically modified maize," *Environ. Sci. Europe* 2014; 26:14, available at http://enveurope.springeropen.com/articles/10.1186/s12302-014-0014-5, last visited December 15, 2017; Benedetti, A.L., "The effects of sub-chronic exposure of Wistar rats to the herbicide Glyphosate-Biocarb, *Toxicol. Lett.* 2004;153(2):227–232, available at http://www.ncbi.nlm.nih.gov/pubmed/15451553, last visited December 15, 2017; Larsen, K., *et al.*, "Effects of Sublethal Exposure to a Glyphosate-Based Herbicide Formulation on Metabolic Activities of Different Xenobiotic-Metabolizing Enzymes in Rats," *Int. J. Toxicol.* 2014, available at http://www.ncbi.nlm.nih.gov/pubmed/24985121, last visited December 15, 2017; Mesnage R., *et al.*, "Transcriptome profile analysis reflects rat liver and kidney damage following chronic ultra-low dose Roundup exposure," *Environ. Health* 2015; 14:70, available at http://www.ncbi.nlm.nih.gov/pmc/articles/PMC4549093/, last visited December 15, 2017.
[18] *The Lancet Oncology*, Vol. 16, No. 5 (May 2015) Available at http://www.thelancet.com/journals/lanonc/article/PIIS1470-2045%2815%2970134-8/abstract, last visited December 15, 2017.
[19] *Id.*

purposes; is not necessary to successful planting, growing, or harvesting of tea; and is not an "All Natural" or environmentally friendly method of growing or harvesting tea.

**D.      Bigelow Tea's Labels Are Misleading and Omit Material Facts**

74.     Bigelow's conduct in labeling or representing the Products as "All Natural" and/or environmentally friendly deceived and/or was likely to deceive the public.

75.     Consumers were deceived into believing that the listed ingredients were all that was contained in the Products, and that the Products are natural, consisting of all natural tea and flavors, and that nothing in the tea was not natural.

76.     Instead, the tea or other ingredients in the Products contain glyphosate, an *un*natural biocide, with myriad other potential health effects now becoming known.

77.     Consumers cannot discover the true nature of the Products from reading the label. Consumers could not discover the true nature of the Products even by visiting Bigelow's website, which makes no mention of glyphosate.

78.     Discovery of the true nature of the ingredients requires knowledge of chemistry and access to laboratory testing that is not available to the average reasonable consumer.

79.     Bigelow deceptively and misleadingly conceals material facts about the Products, namely, that the Products are not "All Natural," "Natural," or environmentally sustainable because in fact the Products contain glyphosate; and the Products are not what a reasonable consumer would consider "All Natural," "Natural," and environmentally sustainable.

80.     The production process Bigelow uses for the Products is known only to Bigelow and its suppliers.

81.     Bigelow has not disclosed such information to Plaintiff.

82.     Testing reveals the presence of glyphosate in the Products, but only Bigelow knows the methods by which its tea are grown, harvested, and processed, or what would account for the presence of glyphosate in the Products.

83.     Bigelow's concealment tolls applicable statute of limitations.

84.     To this day, Bigelow continues to conceal and suppress the true nature, identity, source, and method of production of the Products.

**E.     Bigelow Knew That Its Representations Were False.**

85.     Bigelow holds itself out to the public as a trusted expert in the growing, harvesting, and processing of tea.

86.     Bigelow knew what representations it made on the labels of the Products. It also knew how the tea was grown, harvested, and processed, and that the end product may contain glyphosate, an unnatural and dangerous biocide.

87.     Bigelow thus knew, or should have known, the facts demonstrating that the Products were mislabeled and falsely advertised, and that it had a duty to disclose the presence of glyphosate and the dangers associated with glyphosate.

88.     Consumers frequently rely on label representations and information in making purchase decisions, especially in purchasing food.

89.     Although reliance is not an element of the DC CPPA, Bigelow made the false, misleading, and deceptive representations and omissions intending for consumers to rely upon these representations and omissions in purchasing the Products.

90.     In making the false, misleading, and deceptive representations and omissions at issue, Bigelow knew and intended that consumers would purchase the tea products when consumers would otherwise purchase a competing product.

91.     Consumers are not only willing to pay more for a product with ingredients that purport to be "All Natural" – they expect that product to be free from pesticides and other biocides.

92.     In making the false, misleading, and deceptive representations and omissions at issue, Bigelow also knew and intended that consumers would pay more for products made of "All Natural" ingredients that are free of unnatural agents than they would pay for products made of

ingredients that are not "Natural" or "All Natural," furthering Bigelow's private interest of increasing sales of its products and decreasing the sales of the all-natural and/or glyphosate-free products that are truthfully marketed by its competitors.

93.     Bigelow knows that consumers prefer "Natural" and "All Natural" ingredients, and foods that do not contain dangerous or potentially dangerous chemicals. Bigelow knows that consumers will pay more for "All Natural" products or products with "All Natural" ingredients or would not purchase the foods at all unless they were "All Natural" or made with "All Natural" ingredients and free from unnatural and dangerous chemicals.

94.     Similarly, independent surveys confirm that consumers will purchase more "Natural" products than conventional products, and will pay more for "Natural" products.

95.     Upon information and belief, Bigelow has failed to remedy the problem with the Products, thus causing future harm to consumers.

96.     Consumers are at risk of real, immediate, and continuing harm if the Products continue to be sold as is, and without adequate disclosure of the presence of glyphosate and of the health effects of ingesting glyphosate.

97.     Bigelow has failed to provide adequate relief to members of the consuming public as of the date of filing this Complaint.

98.     Plaintiff contends that the Products were sold pursuant to unfair and unconscionable trade practices because the sale of its tea products offends public policy and is immoral, unethical, oppressive, unscrupulous, and caused substantial economic injuries to consumers.

99.     Reasonable consumers do not expect the Products, represented and advertised as "All Natural" and environmentally friendly to contain unnatural and harmful chemicals or ingredients such as glyphosate. Defendant's statements and other representations convey a series of express and implied claims and/or omissions which Defendant knows are material to the reasonable consumer in making a purchasing decision, and which Defendant intended for

consumers to rely upon when choosing to purchase the Products.

100.    Defendant misrepresented the nature, quality, and/or ingredients of the Products, which was and is false, misleading, and/or likely to deceive reasonable consumers. Reasonable consumers expect the presence of such potentially harmful ingredients to be disclosed so that they can make informed purchasing decisions.

101.    Accordingly, Plaintiff OCA seeks declaratory relief in the form of an order declaring Bigelow's conduct to be unlawful, as well as injunctive and equitable relief putting an end to Bigelow's misleading and unfair business practices, including clear and full disclosure of the presence of glyphosate in the Products and/or a reformulation of the Products so that the Products no longer contain glyphosate.

## CAUSE OF ACTION
### VIOLATION OF THE DISTRICT OF COLUMBIA CONSUMER PROTECTION PROCEDURES ACT

102.    Pursuant to D.C. Code §§ 28-3905(k)(1) and 28-3905(k)(2), Plaintiff brings this Count against Bigelow on behalf of the general public of the District of Columbia, for Bigelow's violation of DC CPPA, D.C. Code § 28-3901, *et seq*.

103.    Plaintiff incorporates by reference all the allegations in the preceding paragraphs of this Complaint.

104.    Bigelow has labeled and advertised the Products as "All Natural" and has otherwise presented an image and marketing materials suggesting that the Products are natural or environmentally friendly, when in fact the Products contain unnatural chemical biocides.

105.    Bigelow's labeling and advertising of the Products misrepresents, tends to mislead, and omits facts regarding the source, characteristics, standard, quality, and grade of the Products.

106.    Bigelow's misleading labeling and advertising include statements that the Products are "Natural," and/or "All Natural."

107.    Bigelow's labeling and marketing materials make representations and use innuendo

that tends to mislead reasonable consumers into believing that the Products are all natural, environmentally friendly, and do not contain any unnatural chemicals

108. The representations omit the truth about the Products, namely, that the Products contain glyphosate.

109. The Products lack the characteristics, ingredients, benefits, standards, qualities, or grades that Bigelow states and implies in its labeling and advertisements.

110. These misstatements, innuendo, and omissions are material and have the tendency to mislead.

111. Bigelow knowingly did not sell the Products as advertised.

112. The facts as alleged above demonstrate that Bigelow has violated the DC CPPA, D.C. Code § 28-3901 *et seq.* Specifically, Bigelow has violated D.C. Code § 28-3904, which makes it an unlawful trade practice to:

(a) represent that goods or services have a source, sponsorship, approval, certification, accessories, characteristics, ingredients, uses, benefits, or quantities that they do not have; . . .

(d) represent that goods or services are of particular standard, quality, grade, style, or model, if in fact they are of another;

(e) misrepresent as to a material fact which has a tendency to mislead; . . .

(f) fail to state a material fact if such failure tends to mislead;

(f-1) [u]se innuendo or ambiguity as to a material fact, which has a tendency to mislead; … [or]

(h) advertise or offer goods or services without the intent to sell them or without the intent to sell them as advertised or offered.

113. The DC CPPA makes such conduct an unlawful trade practice "whether or not any consumer is in fact misled, deceived or damaged thereby." D.C. Code § 28-3904.

114. Though Plaintiff need not show proof of deception to succeed on its DC CPPA

claim, consumers were in fact deceived. Bigelow knew or should have known that reasonable consumers would believe that the Products were natural and/or "All Natural" as labeled and advertised.

115. Plaintiff has a sufficient nexus to consumers of the Products to adequately represent those interests.

116. Because Bigelow misrepresents the characteristics, ingredients, and benefits of the Products; misrepresents the standard, quality, and grade of the Products; misrepresents, fails to state, and uses innuendo and ambiguity in ways which tend to mislead reasonable consumers with regard to material facts about the Products; and advertises the Products without the intent to sell the Products as advertised, Bigelow's labeling and marketing of the Products as "Natural," "All Natural," and/or environmentally friendly violates D.C. Code §§ 28-3904(a), (d), (e), (f), (f-1), and (h).

117. Bigelow is a "person" within the meaning of D.C. Code § 28-3901(a)(1), is a merchant under § 28-3901(a)(3), and provides "goods" within the meaning of § 28-3901(a)(7).

118. Pursuant to D.C. Code § 28-3905(k)(1)(C), "[a] nonprofit organization may, on behalf of itself or any of its members, or on any such behalf and on behalf of the general public, bring an action seeking relief from the use of a trade practice in violation of a law of the District, including a violation involving consumer goods or services that the organization purchased or received in order to test or evaluate qualities pertaining to use for personal, household, or family purposes."

119. Pursuant to D.C. Code § 28-3905(k)(1)(D)(i), "a public interest organization may, on behalf of the interests of a consumer or a class of consumers, bring an action seeking relief from the use by any person of a trade practice in violation of a law of the District if the consumer or class could bring an action under subparagraph (A) of this paragraph for relief from such use by such person of such trade practice."

120.    Via §§ 28-3905(k)(1)(C) and (k)(1)(D)(i), the DC CPPA allows for non-profit organizational standing and public interest organizational standing to the fullest extent recognized by the D.C. Court of Appeals in its past and future decisions addressing the limits of constitutional standing under Article III.

121.    Plaintiff OCA is a "person[s]" within the meaning of D.C. Code § 28-3901(a)(1) and a "non-profit organization[s]" within the meaning of D.C. Code § 28-3901(a)(14) and a "public interest organization" within the meaning of D.C. Code § 28-3901(a)(15).

122.    Plaintiff brings this Count against Bigelow for Bigelow's violation of the DC CPPA, D.C. Code § 28-3901 *et seq*.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment against Defendant Bigelow and request the following relief:

A.    a declaration that Defendant's conduct is in violation of the DC CPPA;

B.    an order enjoining Defendant's conduct found to be in violation of the DC CPPA, as well as corrective advertising;

C.    an order granting Plaintiff costs and disbursements, including reasonable attorneys' fees and expert fees, and prejudgment interest at the maximum rate allowable by law; and

D.    such further relief, including equitable relief, as this Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.

DATED: December 15, 2017

Kim E. Richman

**Richman Law Group**
81 Prospect Street
Brooklyn, NY 11201
Telephone: (212) 687-8291
Facsimile: (212) 687-8292
krichman@richmanlawgroup.com

*Attorney for Plaintiff*

# Superior Court of the District of Columbia

CIVIL DIVISION- CIVIL ACTIONS BRANCH

INFORMATION SHEET

ORGANIC CONSUMERS ASSOCIATION,    Case Number: _____

vs                                Date: _____

R.C. BIGELOW, INC. _____    ☐ One of the defendants is being sued
in their official capacity.

| | |
|---|---|
| Name: *(Please Print)*<br>Kim E. Richman | Relationship to Lawsuit |
| Firm Name:<br>Richman Law Group | ☑ Attorney for Plaintiff |
| Telephone No.:          Six digit Unified Bar No.:<br>(212) 687-8291          1022978 | ☐ Self (Pro Se)<br>☐ Other: _____ |

TYPE OF CASE:   ☐ Non-Jury      ☐ 6 Person Jury      ☑ 12 Person Jury

Demand: $_____      Other: _____

PENDING CASE(S) RELATED TO THE ACTION BEING FILED

Case No.:_____      Judge: _____      Calendar #:_____

Case No.:_____      Judge: _____      Calendar#:_____

---

NATURE OF SUIT:     *(Check One Box Only)*

**A. CONTRACTS**                    **COLLECTION CASES**

☐ 01 Breach of Contract          ☐ 14 Under $25,000 Pltf. Grants Consent   ☐ 16 Under $25,000 Consent Denied
☐ 02 Breach of Warranty          ☐ 17 OVER $25,000 Pltf. Grants Consent    ☐ 18 OVER $25,000 Consent Denied
☐ 06 Negotiable Instrument       ☐ 27 Insurance/Subrogation                ☐ 26 Insurance/Subrogation
☐ 07 Personal Property              Over $25,000 Pltf. Grants Consent          Over $25,000 Consent Denied
☐ 13 Employment Discrimination   ☐ 07 Insurance/Subrogation                ☐ 34 Insurance/Subrogation
☐ 15 Special Education Fees         Under $25,000 Pltf. Grants Consent          Under $25,000 Consent Denied
                                 ☐ 28 Motion to Confirm Arbitration
                                    Award (Collection Cases Only)

---

**B. PROPERTY TORTS**

☐ 01 Automobile          ☐ 03 Destruction of Private Property   ☐ 05 Trespass
☐ 02 Conversion          ☐ 04 Property Damage
☐ 07 Shoplifting, D.C. Code § 27-102 (a)

---

**C. PERSONAL TORTS**

☐ 01 Abuse of Process            ☐ 10 Invasion of Privacy              ☐ 17 Personal Injury- (Not Automobile,
☐ 02 Alienation of Affection     ☐ 11 Libel and Slander                   Not Malpractice)
☐ 03 Assault and Battery         ☐ 12 Malicious Interference           ☐ 18 Wrongful Death (Not Malpractice)
☐ 04 Automobile- Personal Injury ☐ 13 Malicious Prosecution            ☐ 19 Wrongful Eviction
☑ 05 Deceit (Misrepresentation)  ☐ 14 Malpractice Legal                ☐ 20 Friendly Suit
☐ 06 False Accusation            ☐ 15 Malpractice Medical (Including Wrongful Death)  ☐ 21 Asbestos
☐ 07 False Arrest                ☐ 16 Negligence- (Not Automobile,     ☐ 22 Toxic/Mass Torts
☐ 08 Fraud                          Not Malpractice)                   ☐ 23 Tobacco
                                                                       ☐ 24 Lead Paint

SEE REVERSE SIDE AND CHECK HERE          IF USED

# Information Sheet, Continued

## C. OTHERS

- ☐ 01 Accounting
- ☐ 02 Att. Before Judgment
- ☐ 05 Ejectment
- ☐ 09 Special Writ/Warrants
  (DC Code § 11-941)
- ☐ 10 Traffic Adjudication
- ☐ 11 Writ of Replevin
- ☐ 12 Enforce Mechanics Lien
- ☐ 16 Declaratory Judgment

- ☐ 17 Merit Personnel Act (OEA)
  (D.C. Code Title 1, Chapter 6)
- ☐ 18 Product Liability

- ☐ 24 Application to Confirm, Modify,
  Vacate Arbitration Award (DC Code § 16-4401)
- ☐ 29 Merit Personnel Act (OHR)
- ☐ 31 Housing Code Regulations
- ☐ 32 Qui Tam
- ☐ 33 Whistleblower

## II.

- ☐ 03 Change of Name
- ☐ 06 Foreign Judgment/Domestic
- ☐ 08 Foreign Judgment/International
- ☐ 13 Correction of Birth Certificate
- ☐ 14 Correction of Marriage
  Certificate
- ☐ 26 Petition for Civil Asset Forfeiture (Vehicle)
- ☐ 27 Petition for Civil Asset Forfeiture (Currency)
- ☐ 28 Petition for Civil Asset Forfeiture (Other)

- ☐ 15 Libel of Information
- ☐ 19 Enter Administrative Order as
  Judgment [ D.C. Code §
  2-1802.03 (h) or 32-151 9 (a)]
- ☐ 20 Master Meter (D.C. Code §
  42-3301, et seq.)

- ☐ 21 Petition for Subpoena
  [Rule 28-I (b)]
- ☐ 22 Release Mechanics Lien
- ☐ 23 Rule 27(a)(1)
  (Perpetuate Testimony)
- ☐ 24 Petition for Structured Settlement
- ☐ 25 Petition for Liquidation

## D. REAL PROPERTY

- ☐ 09 Real Property-Real Estate
- ☐ 12 Specific Performance
- ☐ 04 Condemnation (Eminent Domain)
- ☐ 10 Mortgage Foreclosure/Judicial Sale
- ☐ 11 Petition for Civil Asset Forfeiture (RP)

- ☐ 08 Quiet Title
- ☐ 25 Liens: Tax / Water Consent Granted
- ☐ 30 Liens: Tax / Water Consent Denied
- ☐ 31 Tax Lien Bid Off Certificate Consent Granted

/s/ Kim E. Richman
_____
Attorney's Signature

12/15/2017
_____
Date

CV-496/ June 2015

Filed
D.C. Superior Court
01/05/2018 16:11PM
Clerk of the Court

# IN THE SUPERIOR COURT FOR
# THE DISTRICT OF COLUMBIA
## Civil Division

|  |  |  |
|---|---|---|
| ORGANIC CONSUMERS ASSOCIATION, | ) | |
| | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | CIVIL ACTION NO. 2017 CA 008375 B |
| v. | ) | Judge: Honorable Robert Rigsby |
| | ) | Next Event: Scheduling Conference |
| R.C. BIGELOW, INC., | ) | March 23, 2018, 10:00am |
| Defendant. | ) | |
| | ) | |
| | ) | |

## PRAECIPE TO ENTER APPEARANCE OF COUNSEL

Pursuant to D.C. Superior Court Rule Civ. P. 101, the undersigned counsel, Brittney

R. Powell, Esq. of the law firm Fox Rothschild LLP, hereby enters her appearance as

counsel for Defendant R.C. Bigelow, Inc. ("Bigelow") in the above-captioned matter.

Submitted, this 5th day of January, 2018.

### FOX ROTHSCHILD LLP

/s/ Brittney R. Powell
Brittney R. Powell, Esq. (DC Bar # 1025907)
1030 Fifteenth Street, N.W.
Suite 380 East
Washington, D.C. 20005
Phone: (202) 794-1186
Fax: (202) 461-3102
bpowell@foxrothschild.com
Attorney for R.C. Bigelow, Inc.

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I caused the foregoing to be served via CaseFile Express on the

following counsel on this, the 5th day of January, 2018:


Kim Richman, Esq.
The Richman Law Group
81 Prospect Street
Brooklyn, NY 11201
krichman@richmanlawgroup.com
Counsel for Plaintiff


**FOX ROTHSCHILD LLP**


_/s/ Brittney R. Powell_
Brittney R. Powell, Esq. (DC Bar # 1025907)
1030 Fifteenth Street, N.W.
Suite 380 East
Washington, D.C. 20005
Phone: (202) 794-1186
Fax: (202) 461-3102
bpowell@foxrothschild.com
Attorney for R.C. Bigelow, Inc.

Filed
D.C. Superior Court
01/05/2018 16:31PM
Clerk of the Court

**IN THE SUPERIOR COURT FOR
THE DISTRICT OF COLUMBIA**
Civil Division

|  |  |  |
|---|---|---|
| ORGANIC CONSUMERS ASSOCIATION, | ) | |
| | ) | |
| | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | CIVIL ACTION NO. 2017 CA 008375 B |
| v. | ) | Judge: Honorable Robert Rigsby |
| | ) | Next Event: Scheduling Conference |
| R.C. BIGELOW, INC., | ) | March 23, 2018, 10:00am |
| Defendant. | ) | |
| | ) | |
| | ) | |

**RULE 7.1 DISCLOSURE STATEMENT**

Defendant R.C. Bigelow, Inc. ("Bigelow"), by and through undersigned counsel and pursuant to the District of Columbia Superior Court Rule 7.1 states that no parent corporation or any publicly held corporation owns 10% or more of Bigelow's stock.

Submitted, this 5th day of January, 2018.

**FOX ROTHSCHILD LLP**

*/s/ Brittney R. Powell*
Brittney R. Powell, Esq. (DC Bar # 1025907)
1030 Fifteenth Street, N.W.
Suite 380 East
Washington, D.C. 20005
Phone: (202) 794-1186
Fax: (202) 461-3102
bpowell@foxrothschild.com
Attorney for R.C. Bigelow, Inc.

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I caused the foregoing to be served via CaseFile Express on the

following counsel on this, the 5th day of January, 2018:


Kim Richman, Esq.
The Richman Law Group
81 Prospect Street
Brooklyn, NY 11201
krichman@richmanlawgroup.com
Counsel for Plaintiff


**FOX ROTHSCHILD LLP**


*/s/ Brittney R. Powell*
Brittney R. Powell, Esq. (DC Bar # 1025907)
1030 Fifteenth Street, N.W.
Suite 380 East
Washington, D.C. 20005
Phone: (202) 794-1186
Fax: (202) 461-3102
bpowell@foxrothschild.com
Attorney for R.C. Bigelow, Inc.

**Filed**
**D.C. Superior Court**
**01/05/2018 17:00PM**
**Clerk of the Court**

**IN THE SUPERIOR COURT FOR**
**THE DISTRICT OF COLUMBIA**
Civil Division

| | |
|---|---|
| ORGANIC CONSUMERS ASSOCIATION, | ) |
| | ) |
| | ) |
| | ) |
| Plaintiff, | ) |
| | ) CIVIL ACTION NO. 2017 CA 008375 B |
| v. | ) Judge:  Honorable Robert Rigsby |
| | ) Next Event:  Scheduling Conference |
| R.C. BIGELOW, INC., | ) March 23, 2018, 10:00am |
| Defendant. | ) |
| | ) |
| | ) |

**DEFENDANT'S CONSENT MOTION FOR AN EXTENSION OF TIME TO ANSWER**
**OR RESPOND TO PLAINTIFF'S COMPLAINT**

Defendant R.C. Bigelow, Inc. ("Bigelow"), through undersigned counsel, hereby

respectfully moves with the consent of Plaintiff for a 31-day extension of time in which to

answer or otherwise respond to Plaintiff's complaint.  Pursuant to Local Civil Rule 12-I,

undersigned counsel obtained the consent of Plaintiff's counsel, Kim Richman, Esq., to this

motion on January 5, 2018.

Good cause exists to grant the requested relief.  Plaintiff's lawsuit is brought

pursuant to the D.C. Protection Procedures Act, for which the complaint was filed on

December 15, 2017.  Bigelow required sufficient time following receipt of service of the

complaint to assess the claims asserted, and to identify and retain counsel for this matter.

In addition, due to office closures in observance of Christmas and New Year's Day,

Bigelow's ability to promptly retain and coordinate with counsel was impeded by the

holiday season.

For the foregoing reasons, Defendant respectfully requests that it be granted a 31-day extension of time to answer or otherwise respond to Plaintiff's complaint.

Submitted, this 5th day of January, 2018.

**FOX ROTHSCHILD LLP**

_/s/ Brittney R. Powell_
Brittney R. Powell, Esq. (DC Bar # 1025907)
1030 Fifteenth Street, N.W.
Suite 380 East
Washington, D.C. 20005
Phone: (202) 794-1186
Fax: (202) 461-3102
bpowell@foxrothschild.com
Attorney for R.C. Bigelow, Inc.

**IN THE SUPERIOR COURT FOR
THE DISTRICT OF COLUMBIA**
Civil Division

|  |  |  |
|---|---|---|
| ORGANIC CONSUMERS ASSOCIATION, | ) | |
| | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | CIVIL ACTION NO. 2017 CA 008375 B |
| v. | ) | Judge:  Honorable Robert Rigsby |
| | ) | Next Event:  Scheduling Conference |
| R.C. BIGELOW, INC., | ) | March 23, 2018, 10:00am |
| Defendant. | ) | |
| | ) | |
| | ) | |

**PROPOSED ORDER**

Having considered the Defendant's Consent Motion for an Extension of Time to

Answer or Respond to Plaintiff's Complaint, it is hereby:

ORDERED that the consent motion is Granted; and it is further

ORDERED that Defendant shall answer or respond by no later than February 5,

2018.


SO ORDERED.


DATE:_____                                    _____

        Washington, D.C.                                        Honorable Robert Rigsby

## CERTIFICATE OF SERVICE

I hereby certify that I caused the foregoing to be served via CaseFile Express on the

following counsel on this, the 5th day of February, 2018:


Kim Richman, Esq.
The Richman Law Group
81 Prospect Street
Brooklyn, NY 11201
krichman@richmanlawgroup.com
Counsel for Plaintiff



**FOX ROTHSCHILD LLP**


*/s/ Brittney R. Powell*
Brittney R. Powell, Esq. (DC Bar # 1025907)
1030 Fifteenth Street, N.W.
Suite 380 East
Washington, D.C. 20005
Phone: (202) 794-1186
Fax: (202) 461-3102
bpowell@foxrothschild.com
Attorney for R.C. Bigelow, Inc.

Filed
D.C. Superior Court
01/10/2018 18:18PM
Clerk of the Court

**SUPERIOR COURT OF THE DISTRICT OF COLUMBIA**
**Civil Division**

| | |
|---|---|
| **ORGANIC CONSUMERS ASSOCIATION,** <br><br> **Plaintiff,** <br><br> v. <br><br> **R.C. BIGELOW, INC.,** <br><br> **Defendant.** | **Case No. 2017 CA 008375 B** <br> **Judge Robert R. Rigsby** <br> **Calendar 10** |

## ORDER

Upon consideration of the Defendant's Consent Motion for an Extension of Time to Answer or Respond to Plaintiff's Complaint, it is this 10th day of January, 2018, hereby

**ORDERED** that Defendant's Consent Motion for an Extension of Time to Answer or Respond to Plaintiff's Complaint is **GRANTED**; and it is further

**ORDERED** that Defendant shall answer or respond to the complaint no later than February 5, 2018.

*Robert R. Rigsby*

_____

Judge Robert R. Rigsby

Copies to all counsel of record.