**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

_____
　　　　　　　　　　　　　　　　　　　　)
ORGANIC CONSUMERS　　　　　　　　)
ASSOCIATION,　　　　　　　　　　　　)
　　　　　　　　　　　　　　　　　　　　)
　　　　　　　Plaintiff,　　　　　　　　　)
　　　　　　　　　　　　　　　　　　　　)
　　　　　v.　　　　　　　　　　　　　　)　　　　Civil Action No. 18-82 (RBW)
　　　　　　　　　　　　　　　　　　　　)
R.C. BIGELOW, INC.,　　　　　　　　　)
　　　　　　　　　　　　　　　　　　　　)
　　　　　　　Defendant.　　　　　　　　)
_____)

## MEMORANDUM OPINION

The plaintiff, Organic Consumers Association (the "OCA"), initiated this civil action in

the Superior Court of the District of Columbia (the "Superior Court") against the defendant, R.C.

Bigelow, Inc. ("Bigelow"), asserting that Bigelow violated the District of Columbia Consumer

Protection Procedures Act ("CPPA"), D.C. Code § 28–3904 (2012).  See Complaint ("Compl.")

¶¶ 102–22.  On January 12, 2018, Bigelow removed the case to this Court.  See Notice of

Removal at 1 ("Notice").  Currently before the Court is the Plaintiff's Motion to Remand for

Lack of Subject-Matter Jurisdiction ("Pl.'s Mot."), which seeks a remand of this case to the

Superior Court, see Pl.'s Mot. at 1, as well as an award of costs and fees (including attorney's

fees) allegedly incurred as a result of the remand litigation, see Memorandum of Points and

Authorities in Support of Plaintiff's Motion to Remand ("Pl.'s Mem.") at 15.  Bigelow also

requests oral argument to address the OCA's motion.  See R.C. Bigelow, Inc.'s Notice of

Request for Oral Argument.  Upon careful consideration of the parties' submissions,[1] the Court

---

[1] In addition to the filings already identified, the Court considered the following submissions in rendering its
decision: (1) Defendant R.C. Bigelow, Inc.'s Memorandum of Points and Authorities in Opposition to Plaintiff's
Motion to Remand for Lack of Subject-Matter Jurisdiction ("Def.'s Opp'n"); and (2) the Plaintiff[']s[] Reply in
Support of Motion to Remand for Lack of Subject[-]Matter Jurisdiction ("Pl.'s Reply").

concludes that it must grant the OCA's motion to remand, deny its request for an award of costs and fees, and deny as moot Bigelow's request for oral argument.

## I.     BACKGROUND

"The OCA is a 501(c)(3) non-profit public-interest organization," Compl. ¶ 20, located in Minnesota, see id. at 1 (listing a Minnesota address in the caption), that "challenge[s] industrial agriculture, corporate globalization, and [seeks] to inspire consumers to 'Buy Local, Organic, and Fair Made,'" id. ¶ 22.  Bigelow is a Connecticut corporation, see Notice ¶ 4, that sells tea products, "including Bigelow's Green Tea, with the representation 'All Natural,' 'Natural,' or other representations that the tea products are environmentally friendly (collectively, the 'Products')," Compl. at 1.

"On October 4, 2017, [the] OCA purchased Bigelow Classic Green Tea at a Walmart located [in] . . . Washington, D.C.[,] in order to evaluate its purported qualities as an 'All Natural' and environmentally friendly product." Id. ¶ 24.  The OCA alleges that "[t]ests conducted by an independent laboratory . . . revealed . . . glyphosate in Bigelow Green Tea," id. ¶ 6,[2] and claims that Bigelow's failure to disclose the presence of glyphosate "deceiv[es] consumers about the nature, quality, and/or ingredients of the Products," id. ¶ 9, because "[n]o reasonable consumer who sees the[] [all natural or environmentally friendly] representations would expect that the . . . Products contain something that is unnatural," id. ¶ 5.  The OCA alleges that Bigelow's labeling, marketing, and sale of the Products are misleading and constitute an unlawful trade practice under the CPPA.  See id. ¶¶ 104–13; see also D.C. Code § 28–3904.

---

[2] According to the OCA, "glyphosate is, by volume, the world's most widely produced herbicide," Compl. ¶ 55, that "was invented by the agrochemical and agricultural biotechnology corporation Monsanto, which began marketing the herbicide in 1974 under the trade name Roundup," id. ¶ 56.

The OCA brings this suit under the CPPA provisions permitting it to file "on behalf of the general public," see Compl. ¶ 14; see also id. ¶ 118 (noting that D.C. Code § 28–3905(k)(1)(C) permits "[a] nonprofit organization [ ], on behalf of itself or any of its members, or on any such behalf and on behalf of the general public, [to] bring an action" under the CPPA (first alteration in original)); id. ¶ 119 (noting that D.C. Code § 28–3905(k)(1)(D)(i) permits "a public interest organization [ ], on behalf of the interests of a consumer or a class of consumers, [to] bring an action" under the CPPA).   The OCA requests three specific types of relief: (1) "a declaration that [Bigelow's] conduct is in violation of the [ ] CPPA"; (2) "an order enjoining [Bigelow's] conduct found to be in violation of the [ ] CPPA, as well as corrective advertising"; and (3) "an order granting [the OCA] costs and disbursements, including reasonable attorneys' fees and expert fees." Id. at 20; see also id. (also requesting "such further relief, including equitable relief, as this Court may deem just and proper").

On December 15, 2017, the OCA filed its Complaint in the Superior Court, see Compl. at 1; see also Notice ¶ 1, and on January 12, 2018, Bigelow removed the case to this Court on the basis of both diversity and federal question jurisdiction.  See Notice ¶¶ 4, 9.  On February 12, 2018, the OCA filed its motion to remand on the grounds that this Court lacks subject-matter jurisdiction on either theory advanced by Bigelow.  See Pl.'s Mot. at 1.

## II.  STANDARD OF REVIEW

A defendant may remove a civil case from a state court to the federal district court embracing the place where such action is pending when the district court has original jurisdiction.  See 28 U.S.C. § 1441(a) (2012).  However, "[b]ecause federal courts are courts of limited jurisdiction, the removal statute is to be strictly construed," Kopff v. World Research Grp., LLC, 298 F. Supp. 2d 50, 54 (D.D.C. 2003), and "[t]he party opposing a motion to remand

bears the burden of establishing that subject[-]matter jurisdiction exists in federal

court," Int'l Union of Bricklayers & Allied Craftworkers v. Ins. Co. of the W., 366 F. Supp. 2d

33, 36 (D.D.C. 2005) (Walton, J.).  As the District of Columbia Circuit has explained, "[w]hen it

appears that a district court lacks subject[-]matter jurisdiction over a case that has been removed

from a state court, the district court <u>must</u> remand the case."  <u>Republic of Venezuela v. Philip</u>

<u>Morris Inc.</u>, 287 F.3d 192, 196 (D.C. Cir. 2002) (emphasis added) (citing 28 U.S.C. § 1447(c));

<u>see also</u> <u>Int'l Union of Bricklayers</u>, 366 F. Supp. 2d at 36 ("[T]he court must resolve any

ambiguities concerning the propriety of removal in favor of remand." (quoting <u>Johnson–Brown</u>

<u>v. 2200 M St., LLC</u>, 257 F. Supp. 2d 175, 177 (D.D.C. 2003))).

### III.    ANALYSIS

#### A.    Diversity Jurisdiction

A federal district court has original jurisdiction over "all civil actions where the matter in

controversy exceeds the sum or value of $75,000, exclusive of interest and costs," and involves a

dispute between "citizens of different [s]tates."  28 U.S.C. § 1332(a)(1).  Here, the parties do not

dispute their diversity of citizenship, but they contest the amount in controversy.  <u>See</u> Pl.'s Mem.

at 6; Def.'s Opp'n at 8.

If a defendant seeks to remove a civil action to federal court, the "defendant's notice of

removal need include only a plausible allegation that the amount in controversy exceeds the

jurisdictional threshold."  <u>Dart Cherokee Basin Operating Co. v. Owens</u>, ___ U.S. ___, ___, 135

S. Ct. 547, 554 (2014) (citing 28 U.S.C. § 1446(a)).  However, if the plaintiff contests the

defendant's allegation, as the OCA does here, "both sides submit proof and the court decides, by

a preponderance of the evidence, whether the amount-in-controversy requirement has been

satisfied."  <u>Id.</u>  "Although '<u>Dart</u> did not prescribe procedures governing what it means for both

sides [to] submit proof[,]' . . . '[p]ost-Dart cases have allowed both sides to submit proof in different ways[,]' including by filing supplemental affidavits or declarations." Apton v. Volkswagen Grp. of Am., Inc., 233 F. Supp. 3d 4, 12–13  (D.D.C. 2017) (alterations and omission in original) (quoting Sloan v. Soul Circus, Inc., Civ. Action No. 15-1389, 2015 WL 9272838, at *5 n.5 (D.D.C. Dec. 18, 2015)).

Bigelow argues that the amount in controversy requirement is satisfied based on the costs it would potentially incur if OCA prevails in this case, namely: (1) complying with the requested injunctive relief and (2) paying the OCA attorney's fees, both of which the OCA requests in its Complaint.  See Def.'s Opp'n at 3, 6–8, 10–11.  For the reasons set forth below, the Court finds that these costs do not satisfy the amount in controversy.

**1.      The Cost of Complying with the Requested Injunctive Relief**

As a threshold matter, the parties dispute whether the Court may consider the cost Bigelow would incur by being required to comply with the requested injunctive relief in its calculation of the amount in controversy.  The OCA argues that "th[e] cost-to-defendant test is no longer used in this Circuit," Pl.'s Mem. at 7, while Bigelow contends in response "that the cost-to-defendant test is a permissible measure of the amount in controversy," Def.'s Opp'n at 9. The Court agrees with Bigelow.

Three recent cases authored by other members of this Court resolving similar motions to remand CPPA actions in which the only relief sought was injunctive and declaratory relief and attorneys' fees, see Animal Legal Def. Fund v. Hormel Foods Corp., 249 F. Supp. 3d 53, 55 (D.D.C. 2017); Breathe DC v. Santa Fe Nat. Tobacco Co., 232 F. Supp. 3d 163, 166 (D.D.C. 2017); Organic Consumers Ass'n v. Handsome Brook Farm Grp. 2, LLC, 222 F. Supp. 3d 74, 76 (D.D.C. 2016), as the OCA does here, see Compl. at 20, have rejected the OCA's position that

the cost-to-defendant test is obsolete,[3] see Animal Legal Def. Fund, 249 F. Supp. 3d at 59 ("The Court follows th[e] precedent and concludes that the cost-to-defendant test remains an appropriate measure of the amount in controversy in this Circuit."); Breathe DC, 232 F. Supp. 3d at 169 ("This Court must follow Circuit precedent, and thus it will consider the cost of the injunction to [the] defendants."); Handsome Brook Farm, 222 F. Supp. 3d at 77 (rejecting the OCA's argument "that the Court should [ ] assess the amount in controversy solely from the plaintiff's viewpoint," because "[t]his argument conflicts with D.C. Circuit precedent"). In Animal Legal Defense Fund, the most recent of these three cases, Judge Kollar-Kotelly explained, as follows, why she "reject[ed] [the p]laintiff's argument that [the d]efendant's 'alleged cost of compliance . . . is no longer considered a proper measure of [the] jurisdictional minimum in district courts in this Circuit'":

> Under binding precedent, the cost-to-defendant test is in fact one appropriate method of measuring the value of injunctive relief in this Circuit. In Tatum v. Laird[,] the Court of Appeals for the District of Columbia Circuit held that "the test for determining the amount in controversy is the pecuniary result to either party which the judgment would directly produce," and determined that the amount in controversy requirement was satisfied in that case because "the cost to the [defendant] of complying with such a [injunction] might well exceed [the amount-in-controversy threshold]." After Tatum, the Court of Appeals and district courts of this Circuit have repeatedly followed this rule. . . .

Animal Legal Def. Fund, 249 F. Supp. 3d at 59 (internal citations omitted) (collecting cases).

The Court agrees with Judge Kollar-Kotelly's reasoning that Tatum is still good law and that it must therefore adhere to the Circuit's rule that, where no monetary damages are sought, as is the case here, see Compl. at 20; see also Pl.'s Mem. at 4 ("[The] OCA does not seek any money damages."), "the amount in controversy may be measured by either 'the value of the right sought

---

[3] The Court notes that the OCA was the plaintiff in one of these cases, see Organic Consumers Ass'n, 222 F. Supp. 3d at 74, and that the plaintiff's counsel, Kim. E. Richman, was the counsel of record for the plaintiffs in all three cases, see Animal Legal Def. Fund, 249 F. Supp. 3d at 54; Breathe DC, 232 F. Supp. 3d at 165; Organic Consumers Ass'n, 222 F. Supp. 3d at 74.

to be gained by the plaintiff . . . [or] the cost [of enforcing that right] to the defendant,'" Tatum v. Laird, 444 F.2d 947, 951 (D.C. Cir. 1971) (alterations and omission in original) (quoting Hedberg v. State Farm Mut. Auto. Ins. Co., 350 F.2d 924, 928 (8th Cir. 1965)), rev'd on other grounds, 408 U.S. 1 (1972).  Accordingly, the Court will consider the cost Bigelow would incur by complying with the requested injunctive relief in its calculation of the amount in controversy.

The parties also dispute whether that cost should be divided among the consumers who would benefit from the injunction.  The OCA argues "that the cost of an injunction issued to a nonprofit proceeding on behalf of the general public . . . must be divided by the number of consumers who benefit from the injunction, and must satisfy the amount-in-controversy requirement for each consumer," Pl.'s Mem. at 10 (first citing Witte v. Gen. Nutrition Corp., 104 F. Supp. 3d 1, 6 (D.D.C. 2015); then citing Breakman v. AOL LLC, 545 F. Supp. 2d 96, 106 (D.D.C. 2008)), while Bigelow contends that its total collective cost of compliance should be counted toward the amount in controversy, see Def.'s Opp'n at 10–11.  The Court agrees with the OCA.

The Supreme Court has made clear that "the separate and distinct claims of two or more plaintiffs cannot be aggregated in order to satisfy the jurisdictional amount requirement," except "in cases in which a single plaintiff seeks to aggregate two or more of his own claims against a single defendant and [ ] in cases in which two or more plaintiffs unite to enforce a single title or right in which they have a common and undivided interest."  Snyder v. Harris, 394 U.S. 332, 335 (1969), superseded by statute on other grounds as recognized in Fireman's Fund Ins. Co. v. St. Paul Fire & Marine Ins. Co., 182 F. Supp. 3d 793, 815 (M.D. Tenn. 2016); see also Zahn v. Int'l Paper Co., 414 U.S. 291, 294 (1973) ("When two or more plaintiffs, having separate and distinct demands, unite for convenience and economy in a single suit, it is essential that the demand of

each be of the requisite jurisdictional amount; but when several plaintiffs unite to enforce a single title or right, in which they have a common and undivided interest, it is enough if their interests collectively equal the jurisdictional amount." (quoting Troy Bank v. G.A. Whitehead & Co., 222 U.S. 39, 40–41 (1911))); superseded by statute on other grounds as recognized in Exxon Mobil Corp. v. Allapattah Servs., Inc., 545 U.S. 546, 566 (2005).  And "the overwhelming weight of authority within th[is] District indicates that defendants seeking to remove [CPPA] actions cannot rely on the total cost of compliance with the plaintiff's requested injunction to establish the amount-in-controversy, as that would violate the non-aggregation principle set forth by the Supreme Court."  Smith v. Abbott Labs., Civ. Action No. 16-501 (RJL), 2017 WL 3670194, at *2 (D.D.C. Mar. 31, 2017) (citing Snyder, 394 U.S. at 336); see also Animal Legal Def. Fund, 249 F. Supp. 3d at 60 (noting that the non-aggregation principle possibly conflicts with the cost-to-defendant test and determining that, "[i]n the absence of binding precedent on this issue, the Court is persuaded by several district court opinions from this Circuit that have considered this conflict in the context of cases brought under the []CPPA on behalf of the general public seeking injunctive relief and have determined that considering the total cost to the [d]efendant of complying with that relief would violate the non-aggregation principle.  These courts have instead found that the cost of compliance that a court should consider when determining the amount in controversy is the total amount divided among the beneficiaries of the injunction." (collecting cases)); Handsome Brook Farm, 222 F. Supp. 3d at 78 ("Indeed, a number of courts in this district have taken this so-called 'cost-running' approach when calculating the amount in controversy." (collecting cases)).

Bigelow raises various arguments as to why the Court should not divide its cost of compliance among consumers, none of which is persuasive.  First, Bigelow makes much of the

fact that in a recent decision dismissing a CPPA action brought by the OCA, another member of this Court concluded that both diversity and federal question jurisdiction existed.  See Def.'s Opp'n at 11–13 (discussing Organic Consumers Ass'n v. Hain Celestial Grp., 285 F. Supp. 3d 100 (D.D.C. 2018)).  In Hain, the OCA filed a CPPA action in the Superior Court, "seeking to prevent [d]efendant Hain Celestial Group, Inc. . . . from labeling its 'Earth's Best' infant and toddler formula products as 'organic,' at least when those products are in the District of Columbia."  285 F. Supp. 3d at 101.  The OCA sought declaratory relief, as well as "an order enjoining the conduct and requiring 'corrective advertising and revised labeling, costs and disbursements (including attorneys' fees), and punitive damages."  Id. at 102.  "Hain [ ] removed [the case] to federal court on the basis of diversity and federal question jurisdiction, and [the OCA] did not contest the removal."  Id.  Thereafter, the Court granted Hain's motion to dismiss the case on the grounds that the OCA's claim was preempted by the federal Organic Food Production Act of 1990.  See id. at 108–09.

Despite the Court's dismissal in Hain, in dicta the Court stated that both diversity and federal question jurisdiction existed.  That conclusion, which appeared in a footnote, is reproduced in its entirety below:

> The requirements for both diversity and federal question jurisdiction are satisfied. As for diversity jurisdiction under 28 U.S.C. § 1332, [the p]laintiff is a Minnesota corporation, while [the d]efendant [is] a Delaware corporation with its principal place of business in the state of New York, and the amount in controversy exceeds $75,000.  See Notice of Removal 3–4; 28 U.S.C. § 1446(c)(2)(B).  The Court also has federal question jurisdiction under 28 U.S.C. § 1331, because this is a "state-law claim [that] necessarily raise[s] a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities." Grable & Sons Metal Prod., Inc. v. Darue Eng'g & Mfg., 545 U.S. 308, 314 (2005).

Id. at 102 n.2 (fourth and fifth alterations in original).

Bigelow argues that in <u>Hain</u>, "there was no application of a non-aggregation principle that required dividing the defendant's costs by an undefined number of potential claimants," Def.'s Opp'n at 12, and therefore, "the non-aggregation principle does not always apply," <u>id.</u> at 11 (capitalization and emphasis removed).  Moreover, Bigelow contends that "[i]t is irrelevant that the OCA did not question the <u>Hain</u> [C]ourt's subject[-]matter jurisdiction because it was incumbent upon the <u>Hain</u> court to assure itself of its jurisdiction, even if <u>sua sponte</u>."  <u>Id.</u> at 12 (emphasis removed).

The Court disagrees with Bigelow's contention that <u>Hain</u> stands for the principle that Bigelow's cost of compliance should not be divided by the number of potential beneficiaries of the injunction because <u>Hain</u> simply does not say that.  <u>Hain</u> did not address the cost-to-defendant test or the non-aggregation principle, nor does it contain <u>any</u> analysis of how the amount in controversy was satisfied, <u>see</u> <u>Hain</u>, 285 F. Supp. 3d at 102 n.2, presumably because the OCA did not contest removal in that case, <u>id.</u> at 102.  The footnote in <u>Hain</u> is merely dicta, but even if it nonetheless provides legal support for Bigelow's position, the Court declines Bigelow's invitation to use it as a basis for departing from "the overwhelming weight of authority within th[is] District" that its cost of compliance should be divided among the number of potential beneficiaries of the injunction.  <u>See</u> <u>Smith</u>, 2017 WL 3670194, at *2.

Also unpersuasive is Bigelow's argument that "[i]n the cases in which the court did divide the defendant's compliance costs and/or the plaintiff's attorney['s] fees by the number of claimants, different factual circumstances led to [each] court['s] conclusions."  Def.'s Opp'n at 13.  First, Bigelow points to <u>Breakman v. AOL LLC</u>, and argues that in that case, "there existed a discernible number of consumers to whom the benefit of the plaintiff's lawsuit would inure[, and therefore, t]he cost to the defendant could reasonably be divided by the number of

allegedly affected consumers." Id. (citing Breakman, 545 F. Supp. 2d 96, 107–08 (D.D.C. 2008)). According to Bigelow, because the OCA failed to identify "any individual in the District of Columbia who claims to have been confused or wronged by Bigelow's products," the Court should not divide Bigelow's cost of compliance by the number of potential beneficiaries. Id. Bigelow's argument fails.

Although Bigelow is correct that in Breakman, the specific number of consumers was identified, it fails to acknowledge that the defendant provided that number. See Breakman, 545 F. Supp. 2d at 100 ("According to AOL, Breakman's complaint will reach 28,451 consumers in the District of Columbia." (emphasis added)); see also Breathe DC, 232 F. Supp. 3d at 171 (where the defendant, not the plaintiff, provided the number of consumers for purposes of dividing the total cost of compliance among them). Therefore, Bigelow's argument that, under Breakman, the OCA had an obligation to identify the number of consumers lacks merit. Moreover, Bigelow's argument that the OCA bears the burden to identify the number of consumers conflicts with the well-settled principle that Bigelow, not the OCA, "bears the burden of establishing that subject[-]matter jurisdiction exists in federal court." Int'l Union of Bricklayers, 366 F. Supp. 2d at 36.

Bigelow also fails to note that in Breakman, the district court held that "the cost-to-defendant test [wa]s inapplicable to the current diversity action," which sought "both injunctive relief and damages." 545 F. Supp. 2d at 105. The Breakman Court noted in dicta that, even if it did consider the defendant's cost of compliance, "the amount in controversy still would not surpass the jurisdictional threshold" once it was divided by the number of consumers. Id. at 106. However, the Breakman Court's conclusion that the cost of compliance, if considered, would be

divided by the number of consumers was not dependent on the fact that such number was readily

discernible.  Rather, the <u>Breakman</u> Court merely stated that,

> [a]s the Seventh and Tenth Circuits have determined, when a court looks to the
> compliance costs of a defendant to determine the amount in controversy in an action
> where separate and dist[in]ct claims are presented on behalf of multiple parties,
> "the cost running to each plaintiff must meet the amount in controversy
> requirement,"

<u>id.</u> at 106 (quoting <u>Lovell v. State Farm Mut. Auto Ins. Co.</u>, 466 F.3d 893, 98 (10th Cir. 2006);

then citing <u>In re Brand Name Prescription Drugs Antitrust Litig.</u>, 123 F.3d 599, 609 (7th Cir.

1997)), and then divided the defendant's cost of compliance by the number of consumers, <u>see id.</u>;

<u>see also</u> <u>Animal Legal Def. Fund</u>, 249 F. Supp. 3d at 61 (rejecting the defendant's argument "that

the non-aggregation principle can have no application in a case with only a single [p]laintiff . . .

[who] brings [its] case on behalf of the general public").

Second, Bigelow argues that the district court in <u>National Consumers League v. Bimbo</u>

<u>Bakeries USA</u>, 46 F. Supp. 3d 64 (D.D.C. 2014), only divided the defendant's cost of

compliance by the number of consumers because the plaintiff brought its action "under D.C.

Code § 28–3905(k)(1)(D), which permits an action by a public interest organization 'on behalf of

the interests of a consumer or class of consumers.'"  Def.'s Opp'n at 13.  According to Bigelow,

"the OCA sues under § 28–3905(k)(1)<u>(C)</u>, which is a suit by a nonprofit organization on behalf

of itself or any of its members," and therefore, its cost of compliance should not be divided by

the number of consumers.  <u>Id.</u> (emphasis removed).  But the OCA brings its suit under both

§ 28–3905(k)(1)(C) <u>and</u> § 28–3905(k)(1)(D), <u>see</u> Compl. ¶ 118 (citing D.C. Code § 28–

3905(k)(1)(C)); <u>id.</u> ¶ 119 (citing D.C. Code § 28–3905(k)(1)(D)(i)), and therefore this argument

fails as well.  <u>See</u> <u>Bimbo Bakeries USA</u>, 46 F. Supp. 3d at 72 ("Due to the non-aggregation

principle, the thousands of products purchased by [District] consumers on whose behalf [the]

plaintiff seeks to recover may not be considered to establish the amount in controversy, as they are 'separate and distinct claims' rather than part of a disgorgement action.").  Accordingly, the Court must divide Bigelow's cost of compliance by the number of consumers when calculating the amount in controversy.

Bigelow claims that the cost of removing the terms "Natural" or "All Natural" from its green tea packaging would cost at least $128,800, <u>see</u> Def.'s Opp'n, Exhibit ("Ex.") A (Declaration of John McCraw ("McCraw Decl.")) ¶ 19, and removing them from all tea products would cost in excess of $500,000, <u>see id.</u>, Ex. A (McCraw Decl.) ¶ 20.  Even if the Court accepts this projected cost, which the OCA does not appear to dispute, <u>see generally</u> Pl.'s Reply, Bigelow "has made no effort to demonstrate—nor could it credibly—that the cost of the injunction divided pro rata among the members of the general public of Washington, D.C. would exceed the jurisdictional threshold," <u>Animal Legal Def. Fund</u>, 249 F. Supp. 3d at 60–61; <u>see generally</u> Def.'s Opp'n (making no attempt to show that the $75,000 threshold is satisfied for each potential beneficiary of the injunction).  Accordingly, Bigelow has not shown that its cost of complying with the requested injunction satisfies the amount-in-controversy requirement for diversity jurisdiction.

### 2. The OCA's Attorney's Fees

Bigelow also argues that the OCA's legal fees it seeks to have Bigelow pay will exceed $75,000.  <u>See</u> Def.'s Opp'n at 6, 11.  Courts in this District have generally agreed that "attorneys' fees may be considered as part of the amount in controversy when they are provided for by statute or contract," <u>Breakman</u>, 545 F. Supp. 2d at 107; <u>see also</u> <u>Handsome Brook Farm</u>, 222 F. Supp. 3d at 78; <u>Zuckman v. Monster Beverage Corp.</u>, 958 F. Supp. 2d 293, 301 (D.D.C. 2013), and the CPPA provides for recovery of attorneys' fees, <u>see</u> D.C. Code § 28-

3905(k)(2)(B).  Therefore, the Court will consider the OCA's attorney's fees in its calculation of the amount in controversy.

The parties dispute whether the attorney's fees, like Bigelow's cost of compliance, should be apportioned among the number of consumers.  See Def.'s Opp'n at 12 ("This Court should disregard the [p]laintiff's overzealous argument that all 'private attorney general' actions require dividing the defendant's . . . attorney['s] fees[] by the total number of consumers . . . .").  The Court concludes, for many of the same reasons provided for rejecting the defendant's cost of compliance argument discussed above, see supra at 7–13, that Bigelow's attorney's fees projection should not be aggregated for purposes of calculating the amount in controversy in assessing whether it has diversity jurisdiction in this case.

As Judge Kollar-Kotelly noted in Animal Legal Defense Fund, the position that "considering the total amount of attorneys' fees in a []CPPA case brought on behalf of the general public would not comport with the non-aggregation principle . . . finds considerable support in a number of district court opinions from this Circuit."  249 F. Supp. 3d at 62; see also Handsome Brook Farm, 222 F. Supp. 3d at 78 ("[O]nly each individual plaintiff's share [of attorney's fees] can be considered as part of the amount in controversy.")

As some members of this Court have noted, "[t]o do otherwise would 'circumvent the non-aggregation principle articulated in Snyder and Zahn.'"  Handsome Brook Farm, 222 F. Supp. 3d at 78 (quoting Witte v. Gen. Nutrition Corp., 104 F. Supp. 3d 1, 6 (D.D.C. 2015)); see also Gen. Mills, 680 F. Supp. 2d at 141 ("[L]ike aggregation of damages, aggregation of attorneys' fees is not appropriate in a CPPA case.").  And this Court, like some of its colleagues, "is not entirely comfortable with the premise that an action should be retained in federal court where satisfaction of the amount in controversy requirement depends upon a lump sum award of

attorneys' fees," given its duty to "strictly construe[] the scope of its removal jurisdiction." Breakman, 545 F. Supp. 2d at 107. Consistent with this prior authority, the Court finds that the attorney's fees must be apportioned among the consumers for purposes of calculating the amount in controversy.[4]

Bigelow argues that the OCA's attorney's fees "will dwarf the $75,000 amount-in-controversy threshold," Def.'s Opp'n at 11, and provides a 2017 declaration by the plaintiff's counsel filed in the Eastern District of New York as support for this proposition, see id., Ex. C (Declaration of Kim Richman in Support of Plaintiffs' Motion for Attorneys' Fees, Costs, and Incentive Awards ("Richman Decl.")) ¶ 23 (stating that he bills at a rate of $700 per hour). Based on this rate, Bigelow calculates that "it will only take 107.2 hours to pass the $75,000 mark," and therefore, Bigelow contends that "it is demonstrably likely that, if victorious, the OCA will demand legal fees far above $75,000." Id. at 8. However, just as with the cost of compliance, because Bigelow makes no attempt to de-aggregate the OCA's attorney's fees, it fails to show that these fees satisfy the amount in controversy.[5] Accordingly, because Bigelow

---

[4] Bigelow argues that, if the Court applies the non-aggregation principle to attorney's fees, "Zuckman should inform the Court's determination of the amount in controversy and 'properly attribute[]' all attorney['s] fees to the lone plaintiff, the OCA." Def.'s Opp'n at 14. The Court disagrees. In Zuckman, the Court "consider[ed] the attorney fees that Zuckman's individual claims support[ed] by calculating a reasonable contingency fee—say, 33%—that would accompany a full judgment on his favor . . . because Zuckman's lawyers [we]re working on a contingency fee basis, and hence any recoverable attorney fees [we]re inherently connected to the monetary value of the claims." 958 F. Supp. 2d at 301. This approach did not fit the facts of this case, however, because, as Bigelow notes, "[t]he OCA is not represented on a contingency fee basis because . . . it is not seeking damages." Def.'s Opp'n at 14 n.4.

[5] The Court need not determine the method of de-aggregating the OCA's attorney's fees, i.e., whether it should "consider only [the OCA's] share of the total fees," as the Zuckman Court did, see 958 F. Supp. 2d at 301, divide the attorney's fees by the number of consumers, as the Animal Legal Defense Fund Court did, see 249 F. Supp. 3d at 62 ("[The d]efendant has not attempted to show that the pro rata amount of attorneys' fees that would be attributable to [the p]laintiff as a member of the general public would exceed $75,000."), or instead decide that, "because [the OCA] is suing under § 28–3905 (k)(1)(D) and is recovering no independent damages, the amount of attorneys' fees applicable to it for jurisdictional purposes are $0," as the Bimbo Bakeries Court did, 46 F. Supp. 3d at 73. Under all three approaches, Bigelow has failed to show that the matter in controversy exceeds $75,000, because it has not even attempted to de-aggregate the attorney's fees. See Def.'s Opp'n at 6–8; see also Handsome Brook Farm, 222 F. Supp. 3d at 78 n.3 (noting the split in authority regarding how to apportion attorney's fees, but then determining that it need not resolve the issue).

does not show that the amount in controversy exceeds $75,000, the Court concludes that it does not have diversity jurisdiction over this case.  <u>See</u> 28 U.S.C. § 1332.

**B.        Federal Question Jurisdiction**

A federal district court has original jurisdiction over "all civil actions arising under the Constitution, laws, or treaties of the United States."  28 U.S.C. § 1331.  To determine whether a case "arises under" federal law, courts apply "the well-pleaded complaint rule, which provides that 'federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint.'"  <u>Beneficial Nat'l Bank v. Anderson</u>, 539 U.S. 1, 12 (2003) (quoting <u>Caterpillar Inc. v. Williams</u>, 482 U.S. 386, 392 (1987)); <u>see also</u> <u>Park S. Neighborhood Corp. v. Vesta Mgmt. Corp.</u>, 80 F. Supp. 3d 192, 194 (D.D.C. 2015) (Walton, J.) ("The 'well-pleaded complaint rule' recognizes that the plaintiff is 'master of the claim' and may rely exclusively on state law to avoid federal question jurisdiction." (quoting <u>Caterpillar</u>, 482 U.S. at 392)).  "[A] 'federal defense, including the defense of preemption,' does not suffice to create federal question jurisdiction."  <u>Organic Consumers Ass'n v. Gen. Mills, Inc.</u>, 235 F. Supp. 3d 226, 230 (D.D.C. 2017) (quoting <u>Caterpillar</u>, 482 U.S. at 392).

When a complaint alleges only state law claims, there are two situations in which federal question jurisdiction may nonetheless exist.  "One situation, seldom encountered, is '[w]hen a federal statute wholly displaces the state-law cause of action,' meaning that 'the federal statutes at issue provided the exclusive cause of action' and 'set forth procedures and remedies governing that cause of action.'"  <u>Id.</u> at 229 (alteration in original) (quoting <u>Anderson</u>, 539 U.S. at 8).  In the other situation, which the Supreme Court has characterized as "a 'special and small category' of cases[,] . . . federal jurisdiction over a state law claim will lie if a federal issue is: (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal

court without disrupting the federal-state balance approved by Congress." Gunn v. Minton, 568 U.S. 251, 258 (2013) (quoting Empire Healthchoice Assurance, Inc. v. McVeigh, 547 U.S. 677, 699 (2006)).

Here, the OCA does not assert a federal cause of action or otherwise even mention federal law at all in its Complaint. See generally Compl. And Bigelow does not argue that a federal law has completely preempted the OCA's claim. See Def.'s Opp'n at 16–21 (arguing only that federal question jurisdiction exists under Gunn). Therefore, for federal question jurisdiction to exist, the OCA's claim must satisfy the four factors identified in Gunn. See Gunn, 568 U.S. at 258.

With regard to the first factor, a federal issue is "necessarily raised" when federal law must be applied or interpreted in order to resolve the claim. Id. at 259; see also id. (holding that the plaintiff's malpractice claim "will necessarily require application of patent law to the facts of [his] case"); District of Columbia v. Grp. Hospitalization & Med. Servs., Inc., 576 F. Supp. 2d 51, 55–56 (D.D.C. 2008) ("Because [the] plaintiff cannot obtain relief on its state law claims without this Court interpreting [a] federal charter, [the] plaintiff's complaint 'necessarily raise[s] a stated federal issue.'" (quoting Grable, 545 U.S. at 314)). Bigelow presents three arguments as to why a federal issue is "necessarily raised" in this case, which the Court shall examine in turn.

First, Bigelow argues that the OCA's CPPA claim "necessarily raises the federal issue of the meaning of 'natural,' which the FDA, applying its jurisdiction over food labeling . . . is currently considering . . . in light of the [ ] use of pesticides." Def.'s Opp'n at 17 (citation and internal quotation marks omitted). According to Bigelow, because the FDA is currently considering the issue, and "has a 'longstanding policy concerning the use of 'natural in human

food labeling'" in general, "the definition of 'natural' on food products is a federal issue." Id.

The Court disagrees.

Although Bigelow is correct that the FDA has issued a request for comments regarding "the use of the term 'natural' in the labeling of human food products," Use of the Term "Natural" in the Labeling of Human Food Products; Request for Information and Comments, 80 Fed. Reg. 69,905, 69,905 (Nov. 12, 2015), including whether "the use of pesticides . . . [should] be a factor in defining 'natural,'" id. at 69,908, the comment period closed more than two years ago, see Use of the Term "Natural" in the Labeling of Human Food Products; Request for Information and Comments; Extension of Comment Period, 80 Fed. Reg. 80,718–19 (Dec. 28, 2015) (extending the commend period to May 10, 2016), and the FDA has not yet issued a proposed rule or taken any other action on this issue, see "Natural" on Food Labeling, U.S. Food & Drug Admin., https://www.fda.gov/Food/GuidanceRegulation/GuidanceDocumentsRegulatoryInformation/LabelingNutrition/ucm456090.htm (last visited June 29, 2018) (stating that the comment period had closed, but not announcing any further action). Therefore, at the moment, there is no federal regulation carrying the force of law regarding the meaning of the word "natural" in food labeling that is currently in effect. See Organic Consumers Ass'n v. Gen. Mills, 235 F. Supp. 3d at 234 ("[T]he fact that the FDA is contemplating future regulation does not raise a federal issue . . . .").

And to the extent that Bigelow argues that the FDA's policy on the issue necessarily raises a federal issue, the FDA has stated that "[w]hen [it] established [its] policy concerning the use of the term 'natural' [on food labels,] . . . it was not intended to address . . . the use of pesticides," Use of the Term "Natural" in the Labeling of Human Food Products; Request for Information and Comments, 80 Fed. Reg. at 69,906; see also Wash. Consulting Grp., Inc. v. Raytheon Tech. Servs. Co., LLC, 760 F. Supp. 2d 94, 104–05 (D.D.C. 2011) (noting that agency

"guidelines do not constitute federal regulations, and thus they lack 'the force and effect of law,'" and therefore, "even if the [agency] guidelines were 'necessarily raised' by [the] plaintiff's well-pleaded complaint, which they are not, the interpretation of these non-regulatory [agency] policies, which are—at most—only of tangential relevance to [the] plaintiff's claims, would not present a substantial question of federal law").  As another member of this Court noted in Organic Consumers Ass'n v. Gen. Mills, when it rejected the exact argument that Bigelow makes here,[6] "to the extent there is an arguable conflict between [the OCA's] claim and the FDA's informal policy, and assuming arguendo that an informal policy has legal significance, the 'federal issue' is really just a 'federal defense,' not a basis for federal question jurisdiction."  235 F. Supp. 3d at 234.  Accordingly, the Court concludes that neither the FDA's policy, nor its current consideration of comments, regarding the word "natural" on food labels "necessarily raises" a federal question because neither constitutes federal law, and therefore there is no federal law regarding the use of the term "natural" on food products that contain pesticides that must be applied or interpreted to resolve the OCA's claim.  See Gunn, 568 U.S. at 259.

Second, Bigelow argues that the Environmental Protection Agency ("EPA") "governs the determination of the harmfulness of glyphosate in food products," Def.'s Opp'n at 17 (capitalization and emphasis removed), and the "[p]laintiff's claim requires this Court to examine federal law related to the safety of glyphosate," id. at 18.  Bigelow is mistaken.

The legal issue that must be resolved based on the allegations in the Complaint is whether Bigelow's failure to disclose the presence of glyphosate in the Products it markets as natural or

---

[6] The Court notes that Bigelow did not address or even cite Organic Consumers Ass'n v. Gen. Mills at all, see Def.'s Opp'n at iii–iv (not listing the case in its Table of Authorities), despite its counsel's duty to do so if counsel was aware of the case, see D.C. Rule of Prof'l Conduct 3.3(a)(3) ("A lawyer shall not knowingly . . . [f]ail to disclose to the tribunal legal authority in the controlling jurisdiction not disclosed by opposing counsel and known to the lawyer to be dispositive of a question at issue and directly adverse to the position of the client . . . ."); see also Pl.'s Mem. (not citing Gen. Mills); Pl's Reply (same).

environmentally friendly constitutes an unlawful trade practice under the CPPA, see generally Compl., and not whether glyphosate's presence in the Products is harmful or unsafe.  This determination regarding unlawful trade practices will not depend on whether Bigelow has complied with the tolerance levels for glyphosate in food products set by the EPA, and therefore, EPA regulations do not necessarily raise a federal issue.  In Organic Consumers Ass'n v. Gen. Mills, a strikingly similar case also brought by the OCA, another member of this Court held that the OCA's claim that General Mills's marketing of a food containing glyphosate as "healthy" violated the CPPA did not necessarily raise a federal issue because, among other reasons, the "claim d[id] not depend on the allegation that glyphosate is unsafe" under EPA regulations. Organic Consumers Ass'n v. Gen. Mills, 235 F. Supp. 3d at 231.  In the Court's view, if the EPA regulations regarding glyphosate safety levels in food did not need to be interpreted or applied to determine whether marketing a food containing glyphosate as "healthy" violated the CPPA, see id. at 231–32, those regulations certainly do not need to be interpreted or applied in this case either, because a food product need not be unsafe in order to be unnatural or not environmentally friendly.  Therefore, the EPA regulations are not necessarily raised by the OCA's claim.

Third and finally, Bigelow argues that "[t]he FDA and EPA govern food labeling requirements," "[t]he FDA has expressly addressed [the p]laintiff's claim . . . [, and u]nder applicable FDA regulations, such incidental substances are expressly exempted from disclosure on food labels."  Def.'s Opp'n at 18 (citation and emphasis omitted).  According to Bigelow, the OCA's claim "demands that the Court examine and interpret federal food labeling laws that address the 'disclosure of the presence and the health effects of ingesting glyphosate' in order to adjudicate" the claim.  Id. (first quoting Compl. ¶ 96; then citing 21 C.F.R. § 101.100(a)(3)(ii), (iii) (2017)).  The Court disagrees.

Bigelow's exact argument was also raised, and rejected, in <u>Organic Consumers Ass'n v.</u> <u>Gen. Mills</u>. In that case, like Bigelow, General Mills "argue[d] that [the OCA's] claim w[ould] require a court to 'assess the meaning and effect' of the[] federal regulations regarding what must be disclosed on food labels "to avoid being 'misbranded' under federal law." <u>Organic</u> <u>Consumers Ass'n v. Gen. Mills</u>, 235 F. Supp. 3d at 232. The Court disagreed, stating that the OCA's

> claim is that it is the undisclosed presence of glyphosate in conjunction with labels or advertisements of the products as "natural" and "healthy" that violates the []CPPA. That claim does not require the application of existing federal disclosure regulations. Moreover, even if [the OCA's] claim were based entirely on [General Mills's] failure to disclose the presence of glyphosate, the fact that federal regulations do not require disclosure would be a defense, not a basis for ["arising under"] jurisdiction.

<u>Id.</u>

The Court finds this reasoning persuasive and adopts it here. The OCA's claim in this case, that Bigelow's marketing of the Products as natural or environmentally friendly violates the CPPA, "does not require the application of existing federal disclosure regulations," and "the fact that federal regulations do not require disclosure [of glyphosate] would be a <u>defense</u>," <u>id.</u> (emphasis added), not a basis for federal question jurisdiction, <u>see</u> <u>id.</u>; <u>see also</u> <u>Caterpillar</u>, 482 U.S. at 399 ("[A] <u>defendant</u> cannot, merely by injecting a federal question into an action that asserts what is plainly a state-law claim, transform the action into one arising under federal law, thereby selecting the forum in which the claim shall be litigated. If a defendant could do so, the plaintiff would be master of nothing. Congress has long since decided that federal defenses do not provide a basis for removal."). Therefore, federal food labeling requirements do not necessarily raise a federal issue because those requirements will not need to be interpreted or applied in this case. Accordingly, because no federal issue is necessarily raised by the OCA's

claim, the Court concludes that it does not have federal question jurisdiction in this case.  See 28

U.S.C. § 1331.[7]

**C.       Attorney's Fees**

The OCA requests "just costs, including attorneys' fees, incurred as a result of Bigelow's

improper removal," should it prevail on its motion for remand.  Pl.'s Mem. at 15.  The Supreme

Court has held that "the standard for awarding fees should turn on the reasonableness of the

removal[, and a]bsent unusual circumstances, courts may award attorney's fees under § 1447(c)

only where the removing party lacked an objectively reasonable basis for seeking removal."

Martin v. Franklin Capital Corp., 546 U.S. 132, 141 (2005).  "A basis for removal is objectively

reasonable when it 'has at least some logical and precedential force.'"  Walker v. Master Sec.

Co., LLC, Civ. Action No. 15–1005 (JDB), 2016 WL 3255009, at *1 (D.D.C. June 13, 2016)

(quoting Knop v. Mackall, 645 F.3d 381, 383 (D.C. Cir. 2011)).  Because there is a "lack of

recent, controlling [Circuit] authority on how the 'non-aggregation' and 'either-viewpoint'

doctrines interact,"  Handsome Brook Farm, 222 F. Supp. 3d at 79, "notwithstanding the thrust

of the opinions of the district courts in this Circuit,"  Breathe DC, 232 F. Supp. 3d at 172, the

Court concludes that Bigelow did not lack an objectively reasonable basis for seeking removal.

Accordingly, the Court will decline to award the OCA attorneys' fees associated with this

remand litigation.

## IV.     CONCLUSION

Because the Court finds that this case does not satisfy the requirements for either

diversity or federal question jurisdiction, it must remand the case to Superior Court.  And,

---

[7] Because no federal issue is necessarily raised, the Court need not consider the remaining Gunn factors.  See Gunn, 568 U.S. at 258.

because the Court finds that Bigelow had an objectively reasonable basis for removal, the Court will deny the OCA's request for attorneys' fees. Finally, the Court denies as moot Bigelow's request for oral argument.

**SO ORDERED** this 29th day of June, 2018.[8]

REGGIE B. WALTON
United States District Judge

---

[8] The Court will contemporaneously issue an Order consistent with this Memorandum Opinion.